of the New York Police Department soon after arrived at Morales' residence. Morales, naked, reacted by retreating out of a window and onto a ledge 10 feet above the sidewalk. Although officers called for an inflatable air bag, they did not wait for it to arrive before shooting Morales with a TASER. Morales went rigid, fell forward onto the sidewalk, landed on his head, and died;[3]

c. In November 2007, Khiel Coppin, 18, was shot to death by New York City police just outside of an apartment building in Bedford-Stuyvesant in Brooklyn. He was an emotionally disturbed person. The evening of the incident, Coppin's mother had called 911 after a failed attempt to get assistance for her son from the psychiatric unit at Interfaith Medical Hospital earlier that same day. Police officers from the 79th Precinct arrived at the scene and ultimately fired 20 bullets at Coppin, who was holding a hairbrush under his shirt and pointing it at the officers. Coppin was pronounced dead at the hospital;

d. David Kostovski, an emotionally disturbed 29-year-old man, was shot with 10 bullets and killed only a few blocks from his home at 421 Autumn Avenue in Brooklyn in 2007 by police from the 75th Precinct who claimed he lunged at them with a broken bottle. David Kostovski and Khiel Coppin were both killed by police in the same week; in response to the killings, members of the New York City Council called on the New York

---

[3] This case, No. 09-Civ-0944, is currently on appeal to the Court of Appeals for the Second Circuit.

12

City Police Department to improve its procedures for handling emotionally disturbed persons, *see* NY City Council Res. 1249-2008, *available at*

*http://legistar.council.nyc.gov/LegislationDetail.aspx?ID=451792&GUID=2AF DAE10-6AB6-4BDE-93D8-5CC2117EAEF1&Options=&Search=* and

e. Gidone Busch was shot and killed by police in 1999 after a confrontation in his Borough Park, Brooklyn apartment. Busch was an emotionally disturbed man who neighbors often observed acting strangely. On the day of the incident, six officers entered Busch's apartment after responding to a call that Busch was waving a hammer around. When officers arrived, and for the duration of the incident, Busch was holding a hammer that was of religious value to him according to his friend at the scene, Percy Freedman. At one point, officers restrained Freeman using handcuffs over his own objections. The officers claimed Freeman's restraint was to protect him from Busch, but Freeman had not felt threatened and wished to remain with Busch. Busch became aggravated and protective when the officers forcefully restrained his friend, so he ran toward the officers, who pepper sprayed him. Eventually Busch was outside and officers circled him. Witnesses testified that Busch was moving only slightly within that circle, if at all, and was not threatening anyone or waving his hammer around. When Busch refused to drop his hammer, the officers took action and fired a round of shots at Busch, killing him almost instantly.

54. The City's failure to provide for adequate training with respect to de-escalation and to mandate the involvement of mental health professionals has caused unnecessary violence and deaths, as described above, in encounters between police and EDPs.

*Cause of Action for Municipal Liability*

55. Municipal defendant the City of New York ("the City") has adopted policies, procedures, practices or customs within the NYPD that allow, among other things, the application of deadly force in circumstances where it is not objectively reasonable.

56. The aforementioned policies, procedures, practices, or customs caused Mr. Jaquez to be deprived of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments.

57. The City failed to properly screen, hire, train, supervise, retain, investigate and discipline members of the NYPD, including but not limited to the individual defendants, regarding the reasonable use of force in the apprehension of suspects.

58. The City's aforementioned failure to properly screen, hire, train, supervise, retain, investigate and discipline amounted to deliberate indifference to the constitutional rights of Mr. Jaquez.

59. The City's failure to properly screen, hire, train, supervise, retain, investigate and discipline caused Mr. Jaquez to be deprived of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments.

60. As a direct and proximate result of the City's aforementioned policies, practices, customs, and omissions, Mr. Jaquez has suffered the aforementioned injuries.

## THIRD CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

### New York State Law Tort: Wrongful Death

61.     Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

62.     At the time and place of the occurrence, Mauricio Jaquez was shot multiple times by gun, causing his death.

63.     The defendants acted in a wrongful and negligent manner and in disregard for the rights of Mr. Jaquez, in using deadly force that was unreasonable under the circumstances.

64.     The City was negligent in the training and supervision of the officers.

65.     As a result of the wrongful and negligent actions of the defendants, Mr. Jaquez was killed.

66.     At all relevant times, the individual defendants were employees, agents, and/or servants of the City; their wrongful and negligent acts were committed within the scope of their employment; and the conduct was generally foreseeable by the City and an incident of the employment. As such, the City is responsible for the conduct of the individual defendants under the doctrine of *respondeat superior*.

67.     The defendants would have been liable to an action by the decedent by reason of such wrongful conduct if death had not ensued.

68.     Mr. Jaquez is survived by his widow, Ana Martinez, his minor children N.J., J.J., A.J., and other unnamed minor children, who have suffered pecuniary losses as a

15

result of his death, for which they are entitled to compensation under New York Estates, Powers and Trusts Law § 5-4.1

69. The Public Administrator Bronx County is Mr. Jaquez's duly appointed representative.

## FOURTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### New York State Law Tort: Assault and Battery

70. Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

71. At the time and place of the occurrence, Mauricio Jaquez was placed in imminent apprehension of harmful bodily contact and death.

72. The defendants intentionally made bodily contact with Mauricio Jaquez without his consent by use of a Taser, rubber bullets, and live ammunition.

73. Such contact was harmful, causing Mauricio Jaquez severe pain, injury, and ultimately death.

74. The intentional contact constituted greater force than was reasonable to effect his apprehension.

75. At all relevant times, the individual defendants were employees, agents, and/or servants of the City; their intentional acts were committed within the scope of their employment; and the conduct was generally foreseeable by the City and an incident of the employment. As such, the City is responsible for the conduct of the individual defendants under the doctrine of *respondeat superior*.

76. As a direct and proximate result of the intentional acts of the defendants, Mauricio Jaquez suffered both physical and mental injuries and is entitled to relief.

77. The Public Administrator of Bronx County is Mr. Jaquez's duly appointed representative.

### FIFTH CAUSE OF ACTION
### AGAINST MUNICIPAL DEFENDANT

**New York State Law Tort: Negligent Screening, Hiring, Retention, Training, and Supervision**

78. Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

79. Defendant City, through the NYPD, owed a duty of care to Plaintiffs to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to Plaintiffs or to those in a like situation would probably result from the foregoing conduct.

80. At all relevant times, the individual officers and the City were in an employee-employer relationship.

81. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were likely to engage in the conduct which caused Mauricio Jaquez's injury and death prior to this occurrence.

82. The individual defendants committed the alleged conduct using weapons issued by the City, through the NYPD.

83. Defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of the injuries of Mauricio Jaquez.

17

84. As a direct and proximate result of this unlawful conduct, Mauricio Jaquez sustained the damages above alleged.

85. The Public Administrator of Bronx County is Mr. Jaquez's duly appointed representative.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

1. An award of compensatory damages against all defendants, jointly and severally, in an amount according to proof at trial;

2. An award of punitive damages against the defendants sued in their individual capacities, in an amount to be proven at trial;

3. The award of any and all other damages allowed by law according to the proof to be determined at the time of trial;

4. Pre-judgment interest on all economic losses;

5. Attorney's fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

6. A trial by jury on all issues so triable; and

7. Such further relief as the Court deems just and proper.

Dated: New York, New York
March 3, 2014

Respectfully submitted,

Zachary Margulis-Ohnuma
Law Office of Zachary Margulis-Ohnuma
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 685-0999