UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE ESTATE OF MAURICIO JAQUEZ, *by* :
*The Public Administrator of Bronx County* :
*as administrator of the Good, Chattels and* :
*Credit of the deceased Mauricio Jaquez*, and :
ANA MARITNEZ,
                                                             :
                              Plaintiffs,                    :
                                                             :
            -v-                                              :
                                                             :
THE CITY OF NEW YORK, et al.,                                :
                                                             :
                              Defendants.                    :
------------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUN 0 9 2014
```

10 Civ. 2881 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

On April 2, 2010, plaintiff, the Estate of Mauricio Jacquez by the Public

Administrator of Bronx County, as Administrator of the Goods, Chattels, and

Credits of the deceased Mauricio Jacquez, filed this action against the City of New

York and New York City Police Officers John Does, alleging violations of Mr.

Jaquez's constitutional rights pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On June

24, 2010, the City of New York filed an Answer. (ECF No. 4.)

This case has a long procedural history, including a trip to the Second Circuit

and back. On March 3, 2014, plaintiff filed an amended Complaint ("the

Complaint"). (ECF No. 72.) The Complaint asserts claims of: (1) excessive force;

(2) municipal liability; (3) wrongful death; (4) assault and battery; and (5) negligent

screening, hiring, retention, training, and supervision. On March 25, 2014,

defendant the City of New York ("the City") filed a partial motion to dismiss (ECF

No. 75), seeking to dismiss plaintiffs' claims for municipal liability and negligent

1

screening, hiring, retention, training, and supervision.  The City's motion became
fully briefed on April 22, 2014.[1]

For all of the reasons set forth below, the City's partial motion to dismiss is
GRANTED.  Plaintiffs' claims for municipal liability and negligent screening,
hiring, retention, training, and supervision are DISMISSED.

I.    BACKGROUND

The Court "accept[s] all factual allegations in the Complaint as true and
draw[s] inference from those allegations in the light most favorable to the plaintiff."
Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

On April 12, 2009, the decedent Mauricio Jaquez, his wife Ana Martinez, and
their children, N.J., J.J., and A.J., were in their home on 479 Commonwealth
Avenue in the Bronx, New York. (Third Amended Complaint ("TAC") ¶ 17.)  At
some point that morning, Ms. Martinez sought medical assistance for Mr. Jaquez by
calling 911.  (Id. ¶ 18.)  The defendant New York City Police Department ("NYPD")
officers responded to the residence.  (Id.)  There is no allegation that Mr. Jaquez
was identified to the NYPD as an EDP.

Ms. Martinez and the children were taken to sit in a police car outside the
residence while Mr. Jaquez remained inside.  (Id. ¶ 19.)

Plaintiffs allege that the defendant officers placed Mr. Jaquez in fear of his
life, assaulted and battered him using Tasers, rubber bullets, and semi-automatic
firearms.  (Id. ¶ 21.)  Ultimately, Mr. Jaquez was killed.  (Id.)

---

[1] No defendant has moved to dismiss the remaining claims.

Plaintiffs contend that following Mr. Jaquez's death and the loss of his economic contributions, Ms. Martinez struggled to find stable housing for her family. (Id. ¶ 24.) From August 24, 2010 until March 18, 2012, Ms. Martinez and her children resided in a homeless shelter. (Id. ¶ 25.) Prior to Mr. Jaquez's death, Ms. Martinez and Mr. Jaquez worked together at a restaurant owned by Ms. Martinez's sister. (Id. ¶ 26.) Mr. Jaquez had acted as the chef and manager of the restaurant; the restaurant was sold a year after Mr. Jaquez's death. (Id. ¶¶ 26-27.)

Plaintiffs allege that as a direct and proximate result of defendants' actions, Mr. Jaquez suffered traumatic injuries, pain, mental anguish, and death. (Id. ¶ 29.) Plaintiffs further allege that as a direct and proximate result of defendants' actions, Ana Martinez and her children, N.J., J.J., and A.J., sustained pecuniary and non-pecuniary injuries as a result of the loss of love, comfort, society, attention, services, and support caused by Mr. Jaquez's death. (Id. ¶ 30.)

Plaintiffs allege, inter alia, that the City failed to train its officers in the proper use of deadly force and developed an unwritten policy and practice whereby officers are allowed to apply deadly force in circumstances where it is not objectively reasonable. (Id. ¶¶ 43-44.) In support of this claim, plaintiffs point to the City's purported failure to investigate use-of-force incidents, its indemnification of officers involved in deadly incidents, and its tolerance of police officers' refusal to inform on or testify against one another. (Id. ¶ 52.)

Plaintiffs further allege that at the time of Mr. Jaquez's death, the City did not provide adequate training to its officers regarding the de-escalation of

3

encounters with emotionally disturbed persons ("EDPs").  (Id. ¶ 49.)  Plaintiffs contend that the City had a policy and practice of sending police, rather than mental health or healthcare professionals, to respond to 911 reports of EDPs.  (Id. ¶ 50.)  They further complain that the City has failed to adopt a more effective training model, such as the "Memphis Model," which consists of a specially-trained Crisis Intervention Team ("CIT") that responds to calls requesting medical intervention for EDPs.  (Id. ¶¶ 46, 48, 51.)

In support of their claim that the City has failed to properly train its officers in the appropriate use of deadly force and in techniques to de-escalate encounters with EDPs, plaintiffs cite to the following incidents where NYPD officers shot and killed EDPs:

- 2012 – Mohamed Bah's mother called for an ambulance for her son, but police officers arrived and confronted Bah despite his refusal and his mother's objections.  After determining Bah was an EDP, NYPD officers with police shields, Tasers, and other weapons surrounded the apartment and forced open Bah's front door.  The officers used a Taser against Bah, fired bean bags at him, and ultimately shot and killed him.[2]

- 2008 – Iman Morales, an EDP, was killed by NYPD officers after his mother called the police out of concern when her son did not answer his front door.  NYPD officers in the Emergency Services Unit, aware they were dealing with an EDP, arrived at Morales' residence.  Morales, who

---

[2] A lawsuit concerning this incident is currently pending in this district.  (TAC ¶ 53(a) n.2.)

4

was naked at the time, retreated out of a window and onto a ledge 10 feet above the sidewalk. Officers called for an inflatable airbag but before it arrived, shot Morales with a Taser. Morales fell forwarded onto the sidewalk, landed on his head, and died.[3]

- 2007 – The mother of Khiel Choppin, an EDP, called 911 after a failed attempt to get assistance for her son at a psychiatric hospital. Choppin was shot and killed by NYPD officers after holding a hairbrush under his shirt and pointing it at the officers.

- 2007 – David Kostovski, an EDP, was shot and killed by police who claimed he lunged at them with a broken bottle.

- 1999 – Six NYPD officers entered Gidone Busch's apartment after responding to a call that Busch was waving around a hammer. When the officers arrived, and for the duration of the incident, Busch was holding a hammer that his friend at the scene stated was of religious value to him. At one point, the officers restrained Busch's friend, aggravating Busch. Busch ran toward the officers and they pepper sprayed him. Eventually, Busch was outside and the officers circled him. Witnesses testified that he was moving slightly, if at all, within the circle and that he was not behaving in a threatening manner. When he was told to drop his hammer and he refused, the officers shot and killed Busch.

---

[3] This case is on appeal to the Second Circuit Court of Appeals. (TAC ¶ 53(b) n.3.)

(Id. ¶ 53.)  Plaintiffs allege that these examples of NYPD interactions with EDPs illustrate that the City's "failure to provide for adequate training with respect to de-escalation techniques and to mandate the involvement of mental health professionals has caused unnecessary violence and deaths . . . in encounters between police and EDPs."  (Id. ¶ 54.)

## II.   PROCEDURAL HISTORY

On April 2, 2010, the Estate of Mauricio Jacquez by the Public Administrator of Bronx County, as Administrator of the Goods, Chattels, and Credits of the deceased Mauricio Jacquez, filed this action against the City of New York and New York City Police Officers John Does. (ECF No. 1.) On June 24, 2010, the City of New York filed an Answer. (ECF No. 4.)

On November 16, 2011, this action was reassigned from The Honorable Thomas P. Griesa to the undersigned. (ECF No. 5.) On January 24, 2012, plaintiff's counsel withdrew from representing plaintiff. (ECF No. 11.) On January 25, 2012, the Court Ordered the City of New York to identify the John Doe police officer defendants involved in the alleged incident, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997). (ECF No. 12.) The Court further Ordered plaintiff to thereafter file an amended Complaint. (ECF No. 12.) On April 2, 2012, the Court Ordered plaintiff to file an amended Complaint no later than April 12, 2012. (ECF No. 16.) Plaintiff failed to comply with the Court's Order and on April 30, 2012, the Court dismissed the action pursuant to Federal Rule of Civil Procedure 41. (ECF No. 17.)

6

Plaintiff, once again counseled, appealed and on June 28, 2012, filed a motion for relief from the dismissal pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (ECF No. 25.) On August 21, 2012, that motion became fully briefed, and on November 28, 2012, the Court denied plaintiff's motion. (ECF No. 33.)

Plaintiff appealed and on November 7, 2013, the Court received a mandate from the Second Circuit, reversing and reinstating the action. (ECF No. 39.)

On March 3, 2014, plaintiffs the Estate of Mauricio Jaquez, Ana Martinez, and N.J., J.J., and A.J., by their mother and natural guardian Ana Martinez, filed the Complaint, alleging claims of excessive force, municipal liability, wrongful death, assault and battery, and negligent screening, hiring, retention, training, and supervision against defendants the City, Sergeant William Flores, Detective Raymond Morrissey, Detective Richard Henderson, and Detective David Namee, pursuant to 42 U.S.C. §§ 1983 and 1988. (ECF No. 72.)

On March 25, 2014, the City filed a partial motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 75.) That motion became fully briefed on April 22, 2014. (ECF No. 80.) On May 5, 2014, defendants William Flores, Raymond Morrissey, Raymond Flood, Richard Henderson, and David McNamee answered the Complaint. (ECF No. 81.)

III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff

7

"must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't., 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying that standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. The Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007).

IV.   DISCUSSION

   a.  Legal Framework

In order to hold a municipality liable pursuant to § 1983, "the governmental body itself [must] 'subject[]' a person to a deprivation of rights or 'cause[]' a person 'to be subjected' to such deprivation." Connick v. Thompson, – U.S. – , 131 S.Ct. 1350, 1359 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). Municipalities may not be held "vicariously liable under § 1983 for their employees' actions;" municipalities are "responsible only for 'their own illegal acts.'" Id.

8

(quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479 (1986)). Put another way, to hold a municipality liable for a § 1983 claim, a plaintiff must ultimately prove that an official municipal policy or custom caused the constitutional injury. <u>Id.</u>

To make out a colorable claim of municipal liability, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and citation omitted).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick</u>, 131 S.Ct. at 1359.

Municipal liability "is at its most tenuous where a claim turns on a failure to train." <u>Id.</u> at 1359. To make out a claim of municipal liability pursuant to a failure to train theory, plaintiffs must allege that the City "disregarded a known or obvious consequence of [its] action." <u>Id.</u> at 1360 (explaining that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary" to make out a failure to train claim) (internal quotation marks and citation omitted).[4]

To make out a deliberate indifference for failure to train claim, plaintiff must allege: (1) the "policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "the situation either presents the employee with a

---

[4] "[I]n a narrow range of circumstances," a single incident may suffice to show deliberate indifference. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-90 (1989). For example, as explained by <u>Canton</u>, arming police officers with firearms knowing they will be required to arrest fleeing felons and then failing to train them on the constitutional limitations of using deadly force would constitute actionable deliberate indifference. <u>Id.</u> at 390 n.10.

9

difficult choice of the sort that training or supervision will make less difficult or that
there is a history of employees mishandling the situation," and (3) "the wrong choice
by the city employee will frequently cause the deprivation of a citizen's
constitutional rights." Wray v. City of New York, 974 F.2d 293, 297-98 (2d Cir.
1992). In a situation such as that currently before the Court, a plaintiff must show
that it was "highly predictable" that its police officers would make incorrect
decisions regarding use of deadly force, that it failed to provide sufficient training,
and that that failure amounted to a "conscious disregard" of the decedent's
constitutional rights. Connick, 131 S.Ct. at 1365 (emphasis omitted).

In this case, plaintiffs allege that the City was deliberately indifferent to Mr.
Jaquez's constitutional rights insofar as it provided inadequate training to police
officers regarding the "appropriate use of deadly force" and "techniques to de-
escalate confrontations with emotionally disturbed persons." (TAC ¶ 53.)

b. Analysis

As an initial matter, plaintiffs have failed to allege a pattern or practice of
constitutional violations by NYPD officers, such that the City was or should have
been aware of deficiencies in its training program. Plaintiffs cite to five other
incidents of NYPD officers using deadly force against alleged EDPs. (Id. ¶ 53.)
According to plaintiffs, these incidents are sufficient to have put the City on notice
that additional training on de-escalation techniques was necessary. The Court
disagrees.

10

First, as the City notes in its papers, the use of deadly force is not on its face unconstitutional. Plaintiff has failed to put forth factual allegations that support a plausible inference that each of the five incidents amounted, in fact, to deprivation of constitutional rights. Without more information regarding the specific circumstances of each case, it is impossible for this Court to determine whether the prior incidents themselves even arguably support an inference of constitutional violations such that their occurrence would amount to putting the City on notice that it had a problem with its training.

Moreover, there is no allegation in the Complaint that Mr. Jaquez was identified as an EDP when the call was placed,[5] nor that the defendant officers believed him to be or identified him as an EDP upon their arrival. In the absence of any such allegation, even were the Court to accept that the incidents cited in the Complaint show a pattern or practice, there is nothing to suggest that this case fits into that pattern.

In any event, the incidents as alleged are not sufficiently similar so as to constitute a "pattern or practice" as is required under the law. For example, of the four incidents that pre-date Mr. Jaquez's death (the incident involving Mohamed Bah occurred on September 25, 2012, nearly three-and-a-half years after Mr. Jaquez's death), only two incidents involved officers who allegedly knew they were

---

[5] Plaintiffs allege that: "Under the Memphis Model, a specially trained Crisis Intervention Team ('CIT'), rather than an Emergency Services or SWAT team, responds to calls requesting medical intervention for emotionally disturbed individuals such as the one at issue here." (TAC ¶ 46 (emphasis added).) However, it is unclear how this would have occurred in the absence of any allegation that Mr. Jaquez was identified as an EDP when the 911 call was placed.

11

dealing with an EDP. (TAC ¶ 54(c), (d).)  NYPD officers surrounded the decedent in one incident, but apparently not the other three.  (Id. ¶ 54(e).)  Plaintiffs provide no information regarding whether the NYPD officers utilized de-escalation tactics prior to deploying force in any or all of the incidents; there is no information regarding any interaction between the decedents and the responding officers to support an inference that inappropriate force was used.  In certain circumstances, deadly force may be necessary and appropriate.  Accordingly, simply listing instances in which EDPs were killed in encounters with law enforcement is insufficient to support a pattern of constitutional violations.  Because of plaintiffs' failure to allege specific similarities between the other incidents, plaintiffs cannot make out a pattern or practice claim sufficient to survive dismissal.

While it is true that under a narrow set of circumstances, municipal liability may be asserted based on an egregious single incident, this is not that case.  There is nothing from the pleadings to suggest that the City acted in an unwarranted fashion, let alone so egregiously as to justify allowing a claim of single incident municipal liability to proceed.  Indeed, based on the allegations, there is no plausible inference that even if the City had specially-trained officers to handle EDPs, they would have been deployed in this case.  There similarly is nothing to suggest that better-training NYPD officers would have handled Mr. Jaquez any differently.

12

For all of these reasons, plaintiffs' allegation that the City showed deliberate indifference by failing to better train its officers on how to handle EDPs fails.[6]

As for plaintiffs' allegation that the City has failed to train its officers in the proper use of deadly force, plaintiffs' allegations are barebones and conclusory. Plaintiffs allege, for example, that the "City has adopted an unwritten policy and practice . . . that allows officers to apply deadly force in circumstances where it is not objectively reasonable." (TAC ¶ 44.) Plaintiffs provide "factual" assertions in support of this claim by contending that the City has failed "to adequately investigate use-of-force incidents" and has tolerated "the so-called 'Blue Wall of Silence,'" whereby officers purportedly do not testify against each other or report one another for misconduct. (TAC ¶ 52.) These allegations, taken together, do not amount to a pattern or practice of unconstitutional conduct on the part of the City. They are vague, conclusory, and insufficient as a matter of law. See, e.g., Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (overruled on other grounds) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."); Cuevas v. City of New York, No. 07 Civ. 4169,

---

[6] The Court also notes that plaintiffs do not point to any cases in which failure to adopt a particular type of training has been found actionable. Indeed, it is not the role of any court to mandate what type of training is the right type of training – courts do not begin to have the knowledge or expertise to wade into these deep waters. While plaintiffs argue that they put forth the Memphis Model only as one example of a more effective training method, the question is not whether more effective models exist, but whether the City's current training was so insufficient – and the City was on notice that it was so insufficient – that the City's failure to use a different training model amounted to a constitutional violation. Plaintiffs have failed to allege such a claim.

2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009) (plaintiff must "show [the] Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right"); Manganiello v. City of New York, 07 Civ. 3644, 2008 WL 2358922, at *10 (S.D.N.Y. June 10, 2008) (the "mere assertion that a municipality has . . . a policy is insufficient to establish Monell liability") (internal quotation marks and citation omitted); McAllister v. New York City Police Dept., 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support such an allegation.").

    c.  Negligent Screening, Hiring, Training, Discipline, and Retention

Plaintiffs allege that the City knew or should have known that the individual defendants were likely to engage in the conduct that caused Mr. Jaquez's death and that its negligence in screening, hiring, training, disciplining, and retaining the individual defendants proximately caused his death. (TAC ¶¶ 81, 83.)

In addition to the standard elements of negligence, to state a claim for negligent supervision or retention under New York law a plaintiff must show: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted). However, "[a] claim for negligent hiring or

14

supervision can only proceed against an employer for an employee acting outside the scope of [his or] her employment." Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158, at \*8 (S.D.N.Y. Apr. 15, 2004) (citation omitted); see also Quiroz v. Zottola, 948 N.Y.S.2d 87, 89, 96 A.D.3d 1035 (2d Dep't 2012); Gurevich v. City of New York, No. 06 Civ. 1646, 2008 WL 113775, at \*6 (S.D.N.Y. Jan. 10, 2008) (collecting cases); Talavera v. Arbit, 795 N.Y.S.2d 708, 709, 18 A.D.3d 738 (2d Dep't 2005).

Here, plaintiffs have failed to allege, even in the alternative, that the individual defendants were acting outside the scope of their employment at the time of the alleged misconduct. (TAC ¶¶ 78-85.) Accordingly, plaintiffs' allegation fails as a matter of law.

Moreover, "[a] cause of action for negligent hiring or retention requires allegations that the employer failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." Bouchard v. New York Archdiocese, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) (internal quotation marks, alterations, and citation omitted). In this case, plaintiffs have made no allegation that the City knew or should have known an investigation of the individual defendants was warranted. For this reason too, plaintiffs' claim fails as a matter of law.

V.     CONCLUSION

For all of the aforementioned reasons, the partial motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.  The status conference scheduled for **July 7, 2014** at **1:30 p.m.** shall proceed as scheduled.

The Clerk of Court is directed to terminate the motion at ECF No. 75.


SO ORDERED.

Dated:      New York, New York
            June  6 , 2014

            _____
                 KATHERINE B. FORREST
                 United States District Judge