```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 17, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

THE ESTATE OF MAURICIO JAQUEZ, :
*by The Public Administrator of Bronx* :
*County as administrator of the Good,* :
*Chattels and Credit of the deceased* :
*Mauricio Jaquez*, and ANA MARTINEZ, :
                 :
             Plaintiffs, :
                 :
             -v- :
                 :
SERGEANT WILLIAM FLORES, Shield :
No. 1023, :
                 :
             Defendant. :

-----------------------------------------------------------X

10 Civ. 2881 (KBF)

OPINION & ORDER
ON MOTIONS IN
LIMINE AND
PRETRIAL MATTERS
#2

KATHERINE B. FORREST, District Judge:

       Trial in this matter will begin on Monday, April 4, 2016.  This is the second of

two opinions released by the Court simultaneously addressing various pretrial

matters.  The Court assumes the reader's familiarity with the facts of this matter,

which have been documented in earlier decisions.  (See, e.g., ECF Nos. 84, 128, 157,

169, and 186.)

       This opinion addresses a number of motions in limine.  (ECF Nos. 204, 207.)

Specifically, the Court here addresses defendants' motions in limine included in

their February 26, 2016 memorandum of law.  (Mem. of Law in Support of Defs.'

Mots. in Limine ("Defs.' Mem."), ECF No. 206.)  The Court also addresses plaintiffs'

motions in limine included in their own February 26, 2016 submission.  (Pls.'s

Second Mots. in Limine ("Pls.' Mem."), ECF No. 207.)  The Court has received

oppositions from both parties.  (Resp. to Defs.' Mots. in Limine ("Pls.' Resp."), ECF

No. 216; Mem. of Law in Opp. to Pls.' Second Mot. in Limine ("Defs.' Resp."), ECF No. 217.)  The Court's rulings are set forth below.

I.      LEGAL STANDARD

The purpose of a motion in limine is to allow the trial court to rule on the admissibility and relevance of certain anticipated evidence before that evidence is actually offered at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996).  The trial court should only exclude the evidence in question "when [it] is clearly inadmissible on all potential grounds."  United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted).

The Federal Rules of Evidence govern the admissibility of evidence at trial. Under Rule 402, evidence must be relevant to be admissible.  Fed. R. Evid. 402. Evidence is relevant if it has a tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401.  In addition to relevancy, admissibility turns on the probative value and prejudice of the evidence in question.  Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The Second Circuit has instructed that the "[d]istrict courts have broad discretion to balance probative value against possible prejudice" under Rule 403.  United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008) (citing United States v. LaFlam, 369 F.3d 153, 155 (2d Cir. 2004)).

Motions in limine are necessarily pretrial motions.  As a result, this Court does not have the benefit of evidence that may come in and connections that may be made at trial.  A lot can happen during a trial.  It is possible that as the trial record develops, it would be in the interests of justice to revisit specific prior rulings.  Accordingly, should the record develop in manner not currently anticipated, or other matters make it clear that the basis for this Court's ruling on a particular matter has been undermined, a party may make an appropriate application.

II.    DISCUSSION

As indicated above this decision addresses most of defendants' sixteen motions in limine and most of plaintiffs' four motions in limine.   The Court addresses each of these requests in turn.

A.    Defendants' MIL # 1: Referring to Defense Counsel as "City Attorneys"

Defendants' first motion seeks to preclude plaintiffs from informing the jury that Sgt. Flores's attorneys are "City attorneys," arguing that allowing plaintiffs to do so may lead the jury to conclude that Sgt. Flores will be indemnified by the City, which may prejudice the jury's assessment of liability or damages.  (Defs.' Mem. at 4-5.)  While plaintiffs agree not to refer to defense counsel as "City attorneys," they argue that "no effort should be made to hide the fact that they work for the City of New York and that the name of their office is the New York City Law Department Office of the Corporation Counsel."  (Pls.' Resp. at 2-3.)  The Court concludes that any references to defense counsel's employment by the City shall be precluded.

Defendants' request is a standard one in these types of actions.  Defendants' concern is that connecting counsel to the City suggests involvement by the City;

3

this, in turn, could cause the jury to view liability less critically, and suggest the presence of a deep pocket.  The Court agrees that this is a valid concern.  While the City has been involved in this litigation, that fact is irrelevant to the determination of liability and damages, which should be based solely on the facts and the law.

The Court is aware that at least one other court in this district has attempted to cure this issue by referring to defense counsel as "Corporation Counsel." Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007).  This Court declines to follow Williams here.  A reference to "Corporation Counsel" may itself be misunderstood by jurors as suggesting some association with a corporation or the City, leading to the same associations with a deep pocket.  The Court instead will "preclude any reference to defense counsel as employees of the City of New York or 'City attorneys.'"  Davis v. City of New York, 296 F.R.D. 127, 130 (E.D.N.Y. 2013) (Weinstein, J.).

Accordingly, defendant's first motion in limine is GRANTED.  The parties and the Court shall refer to counsel for Sgt. Flores as "defendant Flores's lawyer/counsel/attorney."

B.     Defendants' MIL # 2: Evidence of Indemnification by the City

In a similar vein to their first motion, defendants' second motion seeks to preclude plaintiffs from presenting any evidence or argument to the jury regarding the City's potential obligation to indemnify Sgt. Flores under New York General Municipal Law § 50-k.  (Defs.' Mem. at 5-6.)  They argue that such evidence or argument is irrelevant to any fact in issue and would seriously prejudice defendants

because the jury's awareness of a defendant with "deep pockets" could affect its assessment of liability or damages.  Seeking to assert a probative purpose for offering the evidence, plaintiffs counter that the City's potential indemnification of Sgt. Flores and the former defendant officers is relevant as impeachment because it gives the individual officers a motivation to lie.  (Pls.' Resp. at 3-4.)  They argue that they should be entitled to probe into the officer witnesses' potential biases.  The Court concludes that plaintiffs should be precluded from presenting any evidence or argument of the City's potential indemnification.

Although defendants have not cited binding precedent from the Second Circuit on this issue, other circuit courts and courts within this district routinely "exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill."  Lawson v. Trowbridge, 153 F.3d 368, 379 (7th Cir. 1998); see also Larez v. Holcomb, 16 F.3d 1513, 1518 (9th Cir. 1994); Jean-Laurent v. Wilkinson, No. 05 Civ. 0583 (VM), 2009 WL 666832, at *3 (S.D.N.Y. Mar. 13, 2009); Williams, 2007 U.S. Dist. LEXIS 79151, at *24-25.  Evidence that a defendant has "deep pockets" is entirely irrelevant to the issue of damages— evidence of indemnification clearly may not be admitted for that purpose.

As to plaintiffs' argument that evidence of indemnification is relevant because it is probative of the officers' bias, the Court concludes that such evidence must be excluded under Rule 403.  First, while evidence of indemnification may generally be admitted to prove a witness's bias, see United States v. Jasper, No. 00

5

CR. 0825 (PKL), 2003 WL 740878, at *3 (S.D.N.Y. Mar. 3, 2003); cf. Fed. R. Evid. 411, it is not clear that the fact of indemnification shows bias in the circumstances presented here.  An equally valid inference is that the officers' indemnification by the City actually frees them to be forthright and truthful because they need not be concerned about having to pay out-of-pocket for any damages determination. Second, just because the issue of indemnification raises a possible area of bias does not mean that plaintiffs are automatically entitled to probe into that area; the evidence is still subject to Rule 403's balancing test.  United States v. Harvey, 547 F.2d 720, 723 (2d Cir. 1976).  Given the incremental benefit of evidence of indemnification for the purpose of bias in this case, and the significant likelihood that the jury's liability and damages determination would be influenced even if the Court were to issue a limiting instruction, the Court concludes that its admission is substantially outweighed by the risk of unfair prejudice to defendants under Rule 403.

Accordingly, defendants' second motion in limine is GRANTED.

C.    Defendants' MIL # 3: Suggestion of Dollar Amount to the Jury

Defendants' third motion seek to preclude plaintiffs from suggesting a specific dollar amount of damages to the jury during their opening statement, the testimony of any witness, and summation.  (Defs.' Mem. at 6-7.)  Plaintiffs argue that it is premature to rule on this issue at this stage and that it would not be prejudicial error for the Court to allow counsel to suggest a particular damages amount to the jury.  (Pls.' Resp. at 4-5.)  This motion is not premature, as it may

impact opening statements.  The Court concludes that plaintiffs may not offer a specific dollar amount of damages to the jury.

While the Second Circuit has not entirely prohibited trial attorneys from suggesting a particular damages figure to the jury, it has repeatedly expressed its concern about the practice.  <u>Ramirez v. New York City Off-Track Betting Corp.</u>, 112 F.3d 38, 40 (2d Cir. 1997) (citing <u>Mileski v. Long Island R. R. Co.</u>, 499 F.2d 1169, 1172-74 (2d Cir. 1974)); <u>Consorti v. Armstrong World Indus., Inc.</u>, 72 F.3d 1003, 1016 (2d Cir. 1995), <u>as amended</u> (Dec. 22, 1995), <u>cert. granted, judgment vacated sub nom.</u> <u>Consorti v. Owens-Corning Fiberglas Corp.</u>, 518 U.S. 1031 (1996).  This Court is persuaded by the reasoning in <u>Consorti</u> that the better practice is to preclude counsel from suggesting a dollar amount to the jury.  Counsel's choice of a dollar amount has the potential to unduly tether the jury to a number that lacks any evidentiary basis.  The Court is particularly concerned about that risk in the circumstances presented here given plaintiffs' lack of disclosure of their damages calculations in discovery and the Court's <u>in limine</u> ruling below, precluding plaintiffs' from offering such information into evidence.

Accordingly, defendants' third motion <u>in limine</u> is GRANTED.

D.    <u>Defendants' MIL # 4: Sgt. Flores's Disciplinary History</u>

Defendants' fourth motion seeks to preclude plaintiffs from inquiring about any of Sgt. Flores's disciplinary history on the ground that such questioning violates Federal Rule of Evidence 404(b).  (Defs.' Mem. at 7-8.)  Plaintiffs counter only by representing that they have "uncovered prior bad acts by [Sgt.] Flores while on duty that are highly probative of disputed conduct in this case," but state that they

"prefer not to disclose our impeachment evidence . . . at this time." (Pls.' Resp. at 6.) Because plaintiffs have failed to establish that Sgt. Flores's prior bad acts are sufficiently similar to the conduct at issue in this case, the Court precludes evidence of his disciplinary history at this time.

> Rule 404(b) provides:
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

Fed. R. Evid. 404(b). The decision whether to admit evidence under Rule 404(b) turns on "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Huddleston v. United States, 485 U.S. 681, 688 (1988). The Second Circuit has stated that for evidence of prior complaints against a police officer to be admissible under Rule 404(b) for the purpose of establishing a pattern of conduct, "the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978)).

In order to admit evidence of specific prior bad acts against Sgt. Flores, it is plaintiffs' burden to show that those prior bad acts share particular, unique characteristics with the conduct that plaintiffs allege occurred here. Not even

trying to meet this burden, plaintiffs have elected not to disclose their potential Rule 404(b) evidence until and unless Sgt. Flores attempts at trial to claim that Mr. Jaquez posed some sort of threat to him or anyone else at the time of the last shot. (Pls.' Resp. at 6.)  This is hardly a concession, as this is the very issue to be tried. Thus, the Court is left with an expressed intent to use a piece of evidence as to which there has been no proffer.  In light of plaintiffs' insufficient proffer, the Court grants defendants' motion at this stage.  The Court will, however, allow plaintiffs an additional opportunity to make a proffer pre-trial as to the similarities between the conduct at issue here and the evidence they may seek to admit of Sgt. Flores's disciplinary history.  If they do not make a proffer pre-trial, it will not be allowed later.  Plaintiffs, however, should be aware when providing their proffer that the Court does not intend to admit the prior bad acts unless the similarities between the acts are compelling.

Accordingly, defendants' fourth motion in limine is GRANTED.

E.    Defendants' MIL # 5: The Autopsy Photos

Defendants' fifth motion in limine seeks to preclude the admission and use of photos taken during Mr. Jaquez's autopsy.  (Defs.' Mem. at 9-12.)  The Court addresses this motion in a forthcoming separate decision.

F.    Defendants' MIL # 6: Exacerbation Arguments

Defendants' sixth motion in limine seeks to preclude any argument or evidence that the officers created the need for the use of force or exacerbated Mr. Jaquez's emotional state.  (Defs.' Mem. at 12-14.)  Plaintiffs have proffered that they

do not intend to make any such argument.  (Pls.' Resp. at 10.)  Accordingly, defendants' sixth motion in limine is GRANTED.

G.    Defendants' MIL # 7: Arguments About Lesser Force

Defendants' seventh motion seeks to preclude argument or evidence that Sgt. Flores should have responded differently or used lesser force.  (Defs.' Mem. at 15-17.)  Defendants argue that any evaluation of less intrusive alternatives will obscure the question of whether the lethal force actually used was reasonable. Plaintiffs oppose this motion and argue that the availability of lesser alternative force is probative of whether "any threat of death or bodily injury was … in fact imminent when Sgt. Flores took his last shot."  (Pls.' Resp. at 11.)

The Court understands plaintiffs to agree that the fact that Sgt. Flores may have had the opportunity to use lesser force is not directly relevant to a determination of whether the lethal force he did use was excessive.  This position is correct.  Force is excessive in violation of the Fourth Amendment not if it is "more force than necessary," but instead if it is "objectively unreasonable."  See, e.g., Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).  When the force in question is lethal, this inquiry asks whether "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003). The question ultimately relates to whether a particular type of force (including method and application) was appropriate at the time of the incident.  This determination does not include an evaluation of the choices, or lack thereof, the

officer has at his disposal at the relevant moment.  Indeed, courts have consistently held that "the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them."  Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994); see also, e.g., Bancroft v. City of Mt. Vernon, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (if force used was not unreasonable, "it does not matter that some less intrusive alternative would have done the job").  It is certainly the case that while other means might have been available, that fact does not mean that the force actually used was inappropriate.  There can be a wide spectrum of appropriate choices.

        In addition to relevance issues, there is a Rule 403 concern.  To the extent plaintiffs seek to inquire into the availability of less intrusive alternatives as an indirect reflection of the threat Mr. Jaquez actually posed at the time Sgt. Flores took his last shot, the danger that such evidence and argument would be used for impermissible purposes substantially outweighs its probative value.  Fed. R. Evid. 403.  As discussed above, in excessive force cases the inquiry must be carefully focused on the objective reasonableness of what did happen, and not on what might have happened "with the 20/20 vision of hindsight."  Graham v. Connor, 490 U.S. 386, 396 (1989).  Without careful limits, the jury is more likely to (improperly) interpret evidence that the range of responses included alternatives to lethal force as directly relevant to whether lethal force was itself unreasonable than (arguably properly) interpret such evidence as directly relevant only to the threat Mr. Jaquez posed.

The Court cannot, in the context of a motion <u>in limine</u> which necessarily precedes trial, identify all questions which might run afoul of this determination. However, questions such as "Did you consider doing X?" or "Why didn't you do Y?" are precluded.

Therefore, defendants' seventh motion <u>in limine</u> is GRANTED as stated.

H.     <u>Defendants' MIL # 8: Mr. Jaquez's Lost Income or Future Expenses</u>

Plaintiffs' proposed verdict form calls for the jury to award specific damages for medical expenses, dental expenses, custodial care, rehabilitation services, nursing care, loss of income, and funeral expenses incurred in connection with Mr. Jaquez's burial.  (JPTO, Ex. D.)  Plaintiffs' verdict form further asks the jury to set the amount of monetary loss from the time of death to the date of verdict and the amount of future monetary loss sustained by his wife and their three children, and the value of the nurture, intellectual, moral and physical training that was lost by Mr. Jaquez's three children.  (<u>Id.</u>)  Plaintiffs' proposed jury instructions relating to damages similarly informs the jury that plaintiffs are entitled to recover, <u>inter alia</u>, the "reasonable expenses that were paid or incurred by Mauricio Jaquez's estate for medical aid, nursing and other care required to treat Mauricio Jaquez's injuries, and such amount for loss of earnings as you find Mauricio Jaquez would have earned between the date of injury and the date of death had he not been injured." (JPTO, Ex. C at 56.)  Elsewhere, the proposed instructions also state that the jury "will make a separate award for those reasonable expenses for Mauricio Jaquez's funeral and burial lot."  (<u>Id.</u>)  These documents were the first instance in this

litigation that plaintiffs indicated that they would seek these categories of damages at trial.

Defendants' eighth motion seeks to preclude plaintiffs from introducing evidence or testimony concerning these various items of damages because plaintiffs never disclosed the amount, basis or computation for any such claims for damages during discovery, as required by Rule 26.  (Defs.' Mem. at 17-21.)  Before we get to this specific issue, the Court notes that as to <u>all</u> of these itemized categories, if the final shot did not proximately cause death, they may well not be recoverable as damages for that reason alone.  The Court is issuing a separate decision on proximate cause issues and damages related to Mr. Jaquez's death; the parties should refer to that decision for additional guidance.  Thus, the Rule 26 issue raised by defendants in motion <u>in limine</u> number eight is only relevant to the extent plaintiffs are able to show that wound A proximately caused death.  If there is no such showing, the damages flowing from the fact of Mr. Jaquez's death are excluded as not cognizable.   Not knowing the outcome of the proximate cause issue at this time, the Court turns to the disclosure issue.

Plaintiffs concede that they never provided any Rule 26 disclosures in relation to individual categories of damages or lost income.  They argue that their omissions were "plainly justifiable" because at least some of the facts relating to lost income were revealed in Ms. Martinez's 50-H hearing, and by virtue of plaintiffs' completion of authorizations for the City to obtain Mr. Jaquez's tax returns, which constitute the only documentary evidence that plaintiffs seek to admit regarding

lost income.  (Pls.' Resp. at 11-12.)  As to their various claims for damages for specific expenditures, plaintiffs respond only by baldly asserting that they "have not withheld any information from Defendants and have timely cooperated with Defendants' requests for authorizations and information."  (Pls.' Resp. at 12.) Plaintiffs thus do not dispute that they did not provide any Rule 26 disclosures related to their computations of these categories of damages.  As explained below, because plaintiffs failed to comply with their discovery obligations and the 50-H hearing is plainly inadequate and insufficient, and because defendants would be prejudiced by inclusion of this evidence, the Court precludes plaintiffs' introduction of evidence relating to the above listed expenses and lost income.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), plaintiffs were obligated, as part of their initial disclosures (or later supplementation of such disclosures), to provide defendants with "a computation of each category of damages" and "the documents or other evidentiary material . . . on which each computation is based."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  "Where a party without substantial justification fails to disclose information required by Rule 26(a), she is not, unless such failure is harmless, permitted to use as evidence at trial the information not disclosed."  Tse v. UBS Fin. Servs., Inc., 568 F. Supp. 2d 274, 306-07 (S.D.N.Y. 2008) (quotation marks omitted); see Fed. R. Civ. P. 37(c); Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006) (stating that preclusion is not mandatory, as district court may choose an alternative sanction).  Numerous courts have precluded parties from introducing evidence relating to particular

categories of damages where those parties failed to comply with their Rule 26 disclosure obligations.  <u>E.g.</u>, <u>Design Strategy</u>, 469 F.3d at 296 (lost profits); <u>Thompson v. Jamaica Hosp. Med. Ctr.</u>, No. 13 Civ. 1896 (RWS), 2015 WL 3824254, at *4 (S.D.N.Y. June 19, 2015) (precluding evidence of damages not yet produced in discovery); <u>Agence France Presse v. Morel</u>, 293 F.R.D. 682, 683 (S.D.N.Y. 2013) (precluding plaintiff from arguing he was entitled to statutory damages award under DMCA for each of 527 purported violations); <u>Public Adm'r of Queens Cnty. ex rel. Estate and Beneficiaries of Guzman v. City of New York</u>, No. 06 Civ. 7099, 2009 WL 498976, at *12 (S.D.N.Y. Feb. 24, 2009) (dismissing a wrongful death claim because plaintiff "failed to provide furnish any evidence establishing pecuniary loss as a result of [decedent's] death"); <u>24/7 Records, Inc. v. Sony Music Entm't, Inc.</u>, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (preclusion of evidence of loss of income-producing asset theory).

In determining whether to exclude evidence for failure to comply with discovery obligations, the Court must look to the following factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  <u>Patterson v. Balsamico</u>, 440 F.3d 104, 117 (2d Cir. 2006) (quotation marks omitted).  Evidence may be precluded pursuant to Rule 37(c) without the need for a showing of bad faith.  <u>Design Strategy</u>, 469 F.3d at 296.

Plaintiffs refer to their failure to disclose as "justifiable" in light of the 50-H testimony. That no "justification" at all. If the Court were to accept 50-H testimony as sufficient justification for failure to fulfill Rule 26 obligations, the Court would essentially be creating a broad exception applicable in routine cases. This is not the type of justification the rule anticipates. See Kunstler v. City of New York, 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) ("Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" (quoting Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002))). In any event, it is clear that the 50-H testimony does not come close to providing notice of the array of types and amounts of damages sought now. Rule 26 is designed to provide defendants with fair notice of the damages they may be facing. 50-H testimony does not have similar goals and, unsurprisingly, falls far short of accomplishing the goals of Rule 26. The fact that the defendants may have been aware of facts which might be used in some manner to support plaintiffs' damages for lost income based on Ms. Martinez's 50-H hearing, or by receiving authorization forms to obtain Mr. Jaquez's W-2 form, does not take the place of plaintiffs' discovery obligations. See, e.g., Lebada v. New York City Dep't of Educ., No. 14 Civ. 758 (LAK) (GWG), 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016) ("Rule 26(a) thus fulfills a critical function: transmitting formal notice from the disclosing party to the opposing party that the opposing party should be prepared for the disclosing party to use the information provided by the witness."). Plaintiffs cite no authority for the

proposition that defendants' possession of Mr. Jaquez's tax forms excuses their obligation to disclose a computation of damages for lost income.  As to plaintiffs' other claims for damages for various categories of expenditures, plaintiffs do not even attempt to claim that defendants were provided with any information during discovery that could allow them to fairly meet this evidence, nor do they give any explanation as to why this evidence was not turned over during discovery.

None of the other Patterson factors favor plaintiffs.  First, defendants would clearly be highly prejudiced by introduction of this evidence.  As to lost income, defendants' receipt of Mr. Jaquez's W-2 form and awareness that he owned and operated a restaurant was insufficient, in the absence of formal Rule 26 disclosures, to give them an opportunity to fairly meet plaintiffs' evidence and arguments on this issue.  As to all of the other categories of damages at issue, defendants had zero notice of plaintiffs' damages claims or the basis for any computations, and thus had no fair opportunity to appropriately respond by taking their own discovery on these issues.  Spotnana, Inc. v. Am. Talent Agency, Inc., No. 09 Civ. 3698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010).  Given the late stage of the proceedings, the Court will not consider the possibility of a continuance in this protracted case, and plaintiffs have not asked for one.  Finally, while the determination of damages is an important aspect of this trial, plaintiffs were clearly aware that these issues would be hotly contested and central to the case, and merely sought to sandbag the defendants at this late hour.  Plaintiffs proceeded at their peril when they decided

not to furnish the required information to defendants during discovery.  They now must live with that tactical choice.

Accordingly, defendants' eight motion in limine is GRANTED.

I.    Defendants' MIL # 9: Previously Recorded Statements

Defendants' ninth motion seeks to preclude plaintiffs from offering the GO-15 interviews of police officers who will be present to testify at trial.  (Defs.' Mem. at 21; see JPTO, Ex. A, PX30-41, ECF No. 210.)  Plaintiffs counter that, as to all individuals except for Sgt. Flores, they intend to offer this evidence solely for impeachment purposes pursuant to Federal Rule of Evidence 608(b).  (Pls.' Resp. at 12.)  As to Sgt. Flores's recorded statements, plaintiffs assert that these are admissible as non-hearsay admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2).  (Pls.' Resp. at 12-13.)  The heading in plaintiffs' memorandum of law indicates that they intend to lay a proper foundation for the prior recorded statements at trial.  (See Pls.' Resp. at 12.)  At this point, however, they have only provided blanket assertions as to the general bases upon which they seek to admit the recorded statements at issue.

As to the recorded statements of officers other than Sgt. Flores, plaintiffs have failed to meet their burden to show that these statements are admissible under Rule 608(b).  Rule 608(b) bears on evidence showing a witness's character for truthfulness or untruthfulness.  See Fed. R. Evid. 608(b).  Rule 608(b) provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or

support the witness's character for truthfulness." Id. Rule 608(b) further states, however, that "the court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness." Id.

First, it is worth observing that Rule 608(b) bars the admission of extrinsic evidence, rather than serves as a rule of affirmative admissibility of statements such as those at issue here. United States v. Ramirez, 609 F.3d 495, 499 (2d Cir. 2010). It appears that plaintiffs therefore seek to admit the prior recorded statements pursuant to an exception to Rule 608(b), and not pursuant to Rule 608(b) itself. Thus far, plaintiffs have not identified any such exception upon which they seek to rely. Second, even if plaintiffs had identified such an exception, they have failed to specifically identify any particular statements in the recordings relating to any of the officers' characters for truthfulness, instead only making a blanket assertion of the recordings' admissibility. Plaintiffs have therefore not met their burden, at this stage, of showing that the recordings are admissible. The Court therefore precludes these prior recorded statements at this time, although plaintiffs may renew their application to admit particular statements in the recordings that they contend are admissible.

The Court notes that if these statements are offered as impeachment evidence, it does not necessarily follow that they will be admitted. The Federal Rules of Evidence distinguish between evidence used to impeach and substantive evidence. The rules for substantive evidence are not eradicated by the invocation of

the more permissive standards applied to some impeachment evidence.  There is case law on this point with which the Court assumes the parties will be familiar for trial.  The Court will faithfully follow that law.

Plaintiffs assert that Sgt. Flores's recorded statements are admissible under Rule 801(d)(2), which provides that a statement offered against an opposing party that was made by that party in an individual or representative capacity, or a statement that the party manifested that it adopted or believed to be true, is not hearsay.  Fed. R. Evid. 801(d)(2).  Again, plaintiffs have made only a blanket assertion of the recordings' admissibility, without identifying which portions they contend are admissible under this hearsay exclusion.  A review of the relevant recording—which is more than 22 minutes long—demonstrates that it includes questions and statements by individuals other than Sgt. Flores, as well as statements by Sgt. Flores that do not necessarily constitute "admissions" of fact under Rule 801(d)(2).  (See PX 40.)  As plaintiffs have not identified which statements they assert constitute opposing party admissions that fall within the ambit of Rule 801(d)(2), and make only a blanket assertion that the recording is admissible, the Court precludes the recorded statements of Sgt. Flores at this time.  As with the other recordings, however, plaintiffs may renew their application to admit particular statements in the recordings that they contend are admissible pursuant to Rule 801(d)(2).

Accordingly, defendants' ninth motion in limine is GRANTED.  Upon a showing that any specific portions of the recorded statements at issue are

20

admissible under Rules 608(b) or 801(d)(2) the Court may revisit the admissibility of this material.

     J.    <u>Defendants' MIL #10: Foam Sculpture</u>

     Defendants' tenth motion argues that Thomas Beattie should be precluded as an expert and a life-sized model of Mr. Jaquez should not be available as demonstrative evidence. (Defs.' Mem. at 22-25.) Plaintiff argues that Mr. Beattie will testify as the one who created the sculpture – but not as an expert. They further argue that the sculpture should be made available to the jury because "[i]t is not expert opinion, but fact drawn directly from the photographs and measurements contained in the autopsy report." (Pls.' Resp. at 14.)

     Plaintiffs' approach to this evidence tries to have it both ways, simultaneously denying that Mr. Beattie is serving as an expert witness (and thereby circumventing the failure to make the disclosure required of experts) and proposing a use of this proposed evidence that would only be appropriate as a demonstrative aid to help explain an expert's testimony. This proposed testimony and evidence is not analogous to a summary of voluminous data prepared in a rote, non-discretionary way by a non-expert. Fed. R. Evid. 1006. In such instances, a paralegal might (for example) create a chart of phone calls to or from a particular number, drown from far more voluminous data. In such a situation, there is typically a 1:1 correlation between the underlying data and the chart. There is little to no discretion applied. Here, that is not the case. Instead, the application of the "facts" drawn from the autopsy records to the life-sized model of Mr. Jaquez

required interpretation, and in fact defendants have called that interpretation into question in their motion in limine.  For example, the parties present different views as to the position of the right arm or the vector of certain bullet tracks, potentially important facts.  These disagreements demonstrate that mapping the bullet wounds onto the model was not a straightforward mechanical process, but instead required the application of certain expertise.  Even without determining which party has the better argument about, inter alia, the placement of the model's right arm or the vector of bullet track B, the fact of these disputes indicates the need for an aid such as this one to serve as a demonstrative to a properly qualified expert.  It would have been more appropriate for a qualified medical expert to have interpreted the autopsy data and, based on his/her expertise, worked with Mr. Beattie to create the sculpture.  Plaintiffs made a tactical decision not to pursue that route.

Even where expert witnesses create the demonstrative simulations, models, or mock-ups they propose to use to help illustrate their testimony, courts must nonetheless carefully examine such materials to insure their reliability and probative value.  See, e.g., Valente v. Textron, Inc., 931 F. Supp. 2d 409, 416-29 (E.D.N.Y. 2013); Colgan Air, Inc. v. Raytheon Aircraft Co., 535 F. Supp. 2d 580, 583-85 (E.D. Va. 2008); Bowoto v. Chevron Corp., No. C 99-02506 SI, 2006 WL 1627004, at *2-3 (N.D. Cal. June 12, 2006).  The autopsy data is by no means clear to a lay person.  How to translate the data into wounds expressing certain vectors or following certain trajectories requires the application of expertise.  Assessing reliability requires, in part, reliance on such expertise.  In the absence of such

expertise, the Court will not require the defendants to "stipulate" to plaintiffs' decisions as to vectors, arm positions, or trajectories. That would be the equivalent of requiring stipulation to expert opinion. The Court is left unable to determine reliability, and credits the defendants' view as to potential issues with reliability. Preclusion for that reason is appropriate. Where a demonstrative aid threatens to mislead, rather than assist, the jury, it is appropriate for the Court to exclude it.

In this case, the nature of the model also implicates the concerns addressed by Rule 403. The model purports to demonstrate the trajectories the first set of shots took through Mr. Jaquez's body by means of metal rods placed through entry and exit wounds on the model. (ECF No. 205, Exh. 1.) The overall appearance is of a torso pierced through. This may convey a misleading view of certain wounds. Although plaintiffs have not provided the Court with a description of their planned use of the sculpture outside of Mr. Beattie's proposed testimony, the nature of the sculpture emphasizes the wounds not directly at issue in this trial and illustrates them with a permanence and clarity that no party could claim accurately reflects the scene an observer would have witnessed at the relevant moment just before Sgt. Flores fired the final shot.

In addition to the foregoing reasons, the probative value of the sculpture is diminished by the other evidence in this case. There are a wide variety of sources, including testimony, reports, and autopsy photos, which document the placement of bullet wounds on Mr. Jaquez. The existence of that evidence diminishes the value of this interpretive model, as wound placement is the only "factual" matter that the

model would properly convey to the jury; efforts to use the rods in the sculpture as a proxy for trajectory testimony from an expert are necessarily precluded.

Therefore, defendants' tenth motion in limine is GRANTED.

K.    Defendants' MIL #11: Patrol Guide Provisions

Defendants' eleventh motion in limine seeks to preclude plaintiffs from referring to or offering portions of the NYPD Patrol Guide and a related Interim Order. (Defs.' Mem. at 25-26.)  Plaintiffs respond that they do not intend to use such documents in their case in chief, but seek to reserve their right to use them as impeachment materials. (Pls.' Resp. at 15.)   Accordingly, defendants' eleventh motion in limine is GRANTED.  The Court is at this time unclear how these materials would constitute proper impeachment evidence, and as the Court states above, proffering evidence "for impeachment" is not a magic door-opener to admission of otherwise excluded evidence.  If plaintiffs believe there is a proper use for them as impeachment in response to a specific line of questioning at trial, they may make an appropriate application at that time.

L.    Defendants' MIL #12: Dr. Zachary Blumkin

Plaintiffs have identified Zachary Blumkin, Ph.D., as a fact witness who treated Mr. Jaquez's son A.J.  Plaintiffs state that Dr. Blumkin's testimony will be probative of the damages for loss of parental guidance which flowed from the fact of Mr. Jaquez's death.  Defendants' twelfth motion in limine seeks to preclude the testimony of Dr. Blumkin on the ground that plaintiffs' disclosure of this witness was insufficient.  Plaintiffs respond that Dr. Blumkin will not testify as an expert

witness, but instead as a fact witness regarding observations of A.J., and as such the information plaintiffs previously provided about Dr. Blumkin was sufficient to avoid any undue surprise.

It appears to the Court that Blumkin's availability as a witness raises two separate issues. One is whether the failure to disclose him works to preclude him. The other is whether there is a triable issue as to which his testimony is relevant.

In term of the Rule 26 disclosure issue, the Court sees no insurmountable problem with Dr. Blumkin appearing as a witness. Although he was not identified in any initial disclosure, his name and contact information were apparently produced to the defendants during fact discovery. Defendants were apparently aware of his existence long ago and could have moved to depose him. It is clear that in this instance his testimony should not come as a surprise to defendants.

Dr. Blumkin's proposed testimony does, however, raise an additional issue relating to the damages that are cognizable in this case. If the issue to be tried – that is, bullet wound A – did not proximately cause Mr. Jaquez's death, Dr. Blumkin's testimony would be irrelevant and precluded for that reason. As discussed more fully in the Court's companion decision, questions of causation will, as always, be essential to determining what evidence the jury can hear and what damages the jury is instructed to award. The Court has set a schedule by which plaintiffs will have to proffer evidence that could support a rational inference that the final shot proximately caused/was a significant contributing factor in Mr. Jaquez's death.

Accordingly, defendants' twelfth motion <u>in limine</u> is DENIED as to the disclosure issue; however, the admissibility of Dr. Blumkin's testimony will turn on plaintiffs' proffer of evidence suggesting a causal link between the final shot at issue in this trial and Mr. Jaquez's death.

M.     <u>Defendants' MIL #13: The Diagrams Officers Created</u>

Defendants' thirteenth motion argues that floor plans marked up by non-party detectives during their depositions should not be admitted as evidence in the plaintiffs' case-in-chief.  (Defs.' Mem. at 29-30.)  Plaintiffs do not oppose this request, but seek to reserve the right to use them for impeachment purposes.  (Pls.' Resp. at 17.)  Accordingly, defendants' thirteenth motion <u>in limine</u> is GRANTED. The Court again cautions that the mere fact that evidence is properly used to impeach a witness does not necessarily mean it is admissible as substantive evidence; the Federal Rules of Evidence still apply.

N.     <u>Defendants' MIL #14: Pre-Incident Photographs</u>

Defendants' fourteenth motion argues that plaintiffs should be precluded from introducing two pre-incident photographs depicting (1) Mr. Jaquez holding an infant (Pls.' Resp., Ex. B, ECF No. 216-2), and (2) Mr. Jaquez with Ms. Martinez and a child (Pls.' Resp., Ex. C, ECF No. 216-3).  (Defs.' Mem. at 30.)  Defendants argue that the photographs should be precluded because they were not produced during discovery (and not provided to defendants until April 7, 2015), and because they are irrelevant and designed solely to invoke the jury's sympathy.  Plaintiffs counter that defendants never asked for the photographs during discovery and were

produced immediately after they were found, and argue that the photographs are relevant to damages as proof that Mr. Jaquez provided support to his wife and children and to show Mr. Jaquez's overall size and well-being.  (Pls.' Resp. at 17-18.) Plaintiffs also claim in their responses to specific evidentiary objections in the JPTO that the photos are relevant to damages insofar as they demonstrate family involvement.  The Court separates whether the photos might be admissible for a purpose other than damages from their admissibility specifically as to damages.

First, the Court need not pause long on the disclosure issue.  There is no real prejudice identified by defendants as a result of such disclosure.  Second, to the extent the photos are offered for a non-damages reason, such as demonstrating Mr. Jaquez's size, the Court agrees that neither of the pre-incident photographs are relevant to any issue in this case, and to the extent they are minimally relevant, their probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.  In the absence of a clear tie to a cognizable avenue of recovery as proper damages, the only purpose of these photos would be to elicit sympathy.  The photographs are minimally probative, at best, of Mr. Jaquez's size and overall well-being because neither photograph shows Mr. Jaquez's size in a non-misleading way—one photograph depicts Mr. Jaquez from the torso up and only provides a size comparison to a newborn, while the second photograph suggests that Ms. Jaquez is slightly taller than Ms. Martinez, without indicating in any way the absolute heights of Mr. Jaquez, Ms. Martinez or the child being held by Ms. Martinez.  The Court believes there are far better, and less prejudicial, evidentiary alternatives to

27

show Mr. Jaquez's size and physical well-being. Old Chief v. United States, 519 U.S. 172, 184 (1997). In contrast to the minimal relevance of these photographs with respect to the purposes for which plaintiffs seek to offer them, the photographs create a significant likelihood of unfair prejudice because they clearly serve to elicit sympathy from the jury. Their introduction at trial for non-damages reasons is therefore appropriately precluded.

However, if there is a proffer of evidence that would support a finding that the final shot substantially contributed to/proximately caused Mr. Jaquez's death, the admissibility of the photos as probative of damages presents a different question. The Court's guidance as to questions of proximate cause are contained elsewhere in this opinion and the companion opinion. If plaintiffs' factual proffer makes damages stemming from the fact of Mr. Jaquez's death an appropriate issue in this trial, the Court would allow the photos as probative of Mr. Jaquez's family involvement and therefore of damages.

Accordingly, defendants' fourteenth motion in limine is GRANTED in part.

O.    Defendants' MIL #15: Amending the Caption

Defendants' fifteenth motion seeks to delete all parties other than Mr. Jaquez's estate, Ana Martinez, and Sgt. Flores from the caption of this matter. (Defs.' Mem. at 30-32.) Plaintiffs agree that the individual defendants other than Sgt. Flores should be removed but otherwise oppose. (Pls.' Resp. at 18-19.)

As to whether the City should remain listed in the caption as a defendant, the parties agree that the City is only liable to the plaintiffs, if at all, under the

doctrine of <u>respondeat superior</u> as it applies to the remaining (at this time) state law claims, wrongful death and assault and battery.  The jury will not be instructed on any theory by which it could find the City directly liable; instead, the City's liability, if any, is solely derivative of the actions taken by its employees within the scope of their duties.  As such, there is no need to inform the jury that the City remains potentially liable on a derivative theory, and for the reasons set forth above regarding other references to the City, its name will be deleted from the caption.

As to whether N.J., J.J., and A.J. should properly remain listed as plaintiffs, the Court agrees that because their derivative claims were dismissed there is no basis for them to remain as named plaintiffs.  (ECF No. 128.)  As discussed elsewhere in this opinion and the companion opinion, depending on the evidence proffered and presented at trial it may be that N.J., J.J., and A.J.'s experiences concerning their father's death are relevant to damages, in which case the Court will receive testimony and evidence on that topic.  This does not, however, require or allow them to be listed as additional plaintiffs when they do not personally have a surviving cognizable cause of action against defendants.

Accordingly, defendants' fifteenth motion <u>in limine</u> is GRANTED.

P.    <u>Defendants' MIL #16: Availability of a Negligence Charge</u>

Defendants' sixteenth and final motion <u>in limine</u> seeks a determination that the jury will not be instructed on a negligence claim.  (Defs.' Mem. at 32-34.)  In support of this argument, defendants cite cases in support of "the mutual exclusivity of negligence and battery."  <u>See, e.g.</u>, <u>Oliver v. Cuttler</u>, 968 F. Supp. 83,

92 (E.D.N.Y. 1997); Schmidt v. Bishop, 779 F. Supp. 321, 324-25 (S.D.N.Y. 1991).
Plaintiffs respond that the alleged negligence is not the conduct directly at issue in
the excessive force/assault and battery claims against Sgt. Flores, but instead "Sgt.
Flores's failure to warn Mr. Jaquez as well as his failure to treat Mr. Jaquez by
delaying medical attention to Mr. Jaquez after the shooting." (Pls.' Resp. at 19.)

The operative complaint in this matter does not assert or identify this new
negligence theory. The only cause of action that sounds in negligence was
specifically asserted "against municipal defendant," not against Sgt. Flores, and
specifically asserts negligent screening, hiring, retention, training, and supervision.
(ECF No. 72 at 17.) Moreover, this cause of action was dismissed by a previous
Court order. (ECF No. 84 at 14-15.) "Plaintiffs never pled this new theory of
liability and therefore have waived any claims relating to it." In re IBM Corp. Secs.
Litig., 163 F.3d 102, 110 (2d Cir. 1998).

Accordingly, defendants' sixteenth motion in limine is GRANTED.

Q.      Plaintiffs' MIL #1: Limits on George Krivosta's Testimony

Plaintiffs' first motion in limine seeks to limit the testimony of defendants'
proposed expert forensic scientist/ballistic consultant, George Krivosta. (Pls.' Mem.
at 3-7.) Based on his resume, Mr. Krivosta appears to have significant experience
in the field, and he has been qualified as an expert by a number of other courts.
These facts alone do not, however, make up for the surprising and serious
deficiencies in his report. The "Reconstruction of the Shooting" and "Summary"
sections of Mr. Krivosta's report (ECF No. 207, Exh. 1, at 15-19, 21-22) are entirely

<u>ipse dixit</u>, untethered to any appropriate discussion of how he reached his conclusions according to methods experts use in the field, techniques described in the literature, or data of any kind.  Presumably, based on his experience, the Court and jury are supposed to simply accept his assertions as necessarily grounded in acceptable and reliable methods.  The Rules of Evidence require far, far more.  He will thus be precluded from testifying.

Under the familiar standards of Federal Rule of Evidence 702 and the associated case law, "expert testimony may help a jury understand unfamiliar terms and concepts," <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1294 (2d Cir. 1991), but the Court nonetheless has an obligation to act as a gatekeeper.  <u>See, e.g.</u>, <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993).  The Court's inquiry under Rule 702 includes a review of (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact.  <u>See, e.g.</u>, <u>Nimely v. City of New York</u>, 414 F.3d 381, 396–97 (2d Cir. 2005).

With respect to reliability, "the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case."  <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007).  Logically, in order for the Court to evaluate the reliability of the data

and methodology and the grounding of the expert's opinion therein, that data and methodology must be disclosed.

Conclusory opinions unsupported by reliable data are present throughout the report.  Mr. Krivosta fails to describe how his training supports his opinions, whether the undisclosed interpretive methods he uses are accepted in the field, and what data he is interpreting according to what methodology.  He therefore provides no basis by which the Court could conclude that his testimony is reliable and helpful to the factfinder in this case.

Accordingly, plaintiffs' first motion in limine is GRANTED.

R.    Plaintiffs' MIL #2: Ms. Martinez's Immigration Status

Plaintiffs' second motion seeks to preclude any questions or evidence about Ms. Martinez's immigration status and asserts that plaintiffs do not intend to elicit information about this status.  (Pls.' Mem. at 7-8.)  Defendants respond that they do not intend to elicit testimony on this topic or offer evidence about this status. (Defs.' Resp. at 6.)  Plaintiffs' second motion in limine is therefore GRANTED.

S.    Plaintiffs' MIL #3: Evidence Regarding Pornographic Videos

Plaintiffs' third motion seeks to preclude any reference to the fact that Mr. Jaquez was watching pornographic videos in his bedroom prior to the incident that resulted in this death.  (Pls.' Mem. at 8.)  Defendants' assert that they do not intend to offer any information on this topic into evidence, but seek to reserve their right to do so "if plaintiff opens the door."  (Defs.' Resp. at 6.)  Therefore, at this time plaintiffs' third motion in limine is GRANTED.  The parties are cautioned that if

death-related damages are cognizable and plaintiffs seek damages based on Mr. Jaquez's bond with his family and guidance to his children, the door might be opened to a variety of evidence, including this.

      T.   <u>Plaintiffs' MIL #4: The Autopsy Photos</u>

Plaintiffs' fourth motion <u>in limine</u> seeks a determination that the photos taken during Mr. Jaquez's autopsy are admissible.  (Pls.' Mem. at 9-16.)  The Court addresses this motion in a forthcoming separate decision.

      U.   <u>The 911 Calls</u>

Finally, although neither party specifically moved <u>in limine</u> for a ruling on plaintiffs' objection to defendants' proposed use of the 911 calls, the Court takes this opportunity to lay out its view of this question before the final pretrial conference. The 911 calls, and the transcripts thereof, convey the statements of individuals speaking about a distressing, ongoing emergency.  They therefore fall within two different exceptions to the hearsay rule, as they constitute excited utterances under Federal Rule of Evidence 803(1) and present sense impressions under Federal Rule of Evidence 803(2).  <u>United States v. Jones</u>, 299 F.3d 103, 112-13 (2d Cir. 2002). The contemporaneous description of a startling event, made to a 911 operator for purpose of seeking emergency assistance, is a sufficiently reliable out of court statement to merit admission into evidence under these well-recognized rules.

The Court cautions that its ruling is limited to the 911 calls and transcripts; the disc defendants provided also contains several hours of audio recordings that

appear to capture radio communications among police officers, as to which this opinion has no bearing.

III.   CONCLUSION

For the foregoing reasons, defendants' first, second, third, fourth, sixth, eighth, ninth, tenth, eleventh, thirteenth, fifteenth, and sixteenth motions in limine are GRANTED; defendants' seventh and fourteenth motions in limine are GRANTED IN PART; defendants' twelfth motion in limine is DENIED; and plaintiffs' first, second, and third motions in limine are GRANTED. As to the issues raised in defendants' fourth and ninth motions in limine, plaintiffs may seek reconsideration of these rulings as explained in this decision.


SO ORDERED.

Dated:      New York, New York
            March 17, 2016

_____
        KATHERINE B. FORREST
        United States District Judge