```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 30, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE ESTATE OF MAURICIO JAQUEZ,
*by The Public Administrator of Bronx
County as administrator of the Good,
Chattels and Credit of the deceased
Mauricio Jaquez*, and ANA MARTINEZ,

        Plaintiffs,

    -v-

SERGEANT WILLIAM FLORES, Shield
No. 1023,

        Defendant.
------------------------------------------------------------X

10 Civ. 2881 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

  In connection with a number of in limine rulings issued on March 17, 2016, the Court questioned whether there is sufficient evidence to support a triable issue on whether the single gunshot wound that is the subject of this trial was a substantial contributing factor in the death of Mauricio Jaquez. (ECF No. 218.) The resolution of this question impacts a substantial quantum of evidence that will either be part of, or excluded from, the parties' trial presentations. The Court invited defendant to file a motion for summary judgment on this issue; that motion is now fully briefed. (ECF Nos. 226, 229.)

  For the reasons stated below, plaintiffs have failed to submit the minimum evidence necessary to support a triable issue on this question. This determination necessitates dismissal of plaintiffs' wrongful death claim as well as preclusion of evidence regarding damages proximately related to death.

I. BACKGROUND

This case concerns the fatal shooting of an emotionally disturbed person, Mauricio Jaquez, by several New York City Police Department officers, including the remaining defendant, Sergeant William Flores.  On April 12, 2009, NYPD officers responded to a 911 call from Mr. Jaquez's home.  The subsequent encounter escalated into a struggle, during which Mr. Jaquez repeatedly threatened the officers with a knife.  During what was by all accounts a chaotic melee, the team of officers used multiple rounds of Tasers, rubber bullets, and finally live ammunition against Mr. Jaquez.  He was shot several times in the torso.  The final bullet entered the back of his head.  Ultimately, he was killed.

Plaintiffs brought an action asserting claims for, inter alia, the use of excessive force in violation of the United States Constitution under 42 U.S.C. § 1983, assault and battery under New York State tort law, and wrongful death under New York State tort law.  (ECF No. 72 at 7-18.)

On May 8, 2015, the Court granted summary judgment to all defendants other than Sgt. Flores, and granted it to Sgt. Flores "with respect to claims based on the use of non-lethal force and the use of lethal force preceding the final bullet," but denied it "with respect to the final use of lethal force."  (ECF No. 169 at 46.)  The Court specifically denied summary judgment to Sgt. Flores on the wrongful death claim, but only analyzed whether there was a triable issue of fact as to whether the record supported a finding that he had committed a wrongful act, neglect, or default; the opinion did not analyze causation.  (Id. at 45.)

2

As trial neared, two significant – and related – disputes about the scope of the trial arose. The first turned on whether which wound the final bullet caused was still in dispute. The Court surveyed the record and the parties' binding positions throughout the history of this litigation and concluded that there was no triable issue on the question of whether the final bullet caused what has come to be known as "wound A." (ECF No. 218 at 3-8.) The bullet that caused this final injury "entered Mr. Jaquez's body behind the right ear, traveled directly downward, slightly right to left through the muscle of his neck, fractured part of his cervical spine, and lodged itself on the right side of his thoracic spine." (Id. at 4 (internal quotation marks omitted).)

The second dispute over the scope of trial followed from the resolution of the first: given that the final bullet caused wound A, rather than one of the other wounds to Mr. Jaquez's torso, was there "sufficient evidence from which a jury could rationally conclude that [defendant's actions] were a substantial factor in causing the death of the decedent," or was the defendant entitled to summary judgment on the wrongful death claim? (Id. at 9 (quoting Marus v. Vil. Med., 858 N.Y.S.2d 735, 737 (App. Div. 2008)).) The Court requested briefing on this question, which the parties subsequently provided. (ECF Nos. 226 & 229.)

II. LEGAL PRINCIPLES

    A.    <u>Summary Judgment Standard</u>

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). The Court's function on summary judgment is to determine whether there exist any genuine issues of material fact to be tried, not to resolve any factual disputes. . . Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

B.    <u>Wrongful Death</u>

"Under New York law, to recover damages for wrongful death, a plaintiff must prove: (1) the death of a human being; (2) a 'wrongful act, neglect or default of the defendant' that caused the decedent's death; (3) the survival of distributees who suffered pecuniary loss by reason of the decedent's death; and (4) the appointment of a personal representative of the decedent." <u>Pub. Adm'r of Queens County ex rel. Estate & Beneficiaries of Guzman v. City of New York</u>, No. 06 Civ. 7099, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009) (citing <u>Chong v. New York City Transit Auth.</u>, 83 A.D.2d 546, 441 N.Y.S.2d 24, 25-26 (2d Dep't 1981)). New York applies "[t]he substantial factor standard for causation," which "recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury." <u>In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.</u>, 591 F. Supp. 2d 259, 266 (S.D.N.Y. 2008). Plaintiff bears the burden of proving all elements of the claim, including causation, by a preponderance of the evidence. <u>Id.</u>

III.    ANALYSIS

A.    <u>Wrongful Death Causation</u>

"In any action to recover damages for personal injuries or wrongful death, a verdict for the plaintiff based on mere speculation as to the cause of the injuries or death cannot be allowed to stand. There must be proof that the wrongful act complained of was the proximate cause of the injuries." <u>Horne v. Metro. Transit</u>

Auth., 440 N.Y.S.2d 695, 696 (App. Div. 1981) (citations omitted).  The question presented by this motion is what proof, under these circumstances, will suffice.

Under Second Circuit precedent, "expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." Barnes v. Anderson, 202 F.3d 150, 159 (2d Cir. 1999) (quoting Shegog v. Zabrecky, 654 A.2d 771, 776 (Conn. 1995)).  This requirement "is by no means limited to the medical malpractice context," id. at 160, but rather applies equally to wrongful death cases.  See, e.g., Nealy v. U.S. Surgical Corp., 587 F. Supp. 2d 579, 585-87 (S.D.N.Y. 2008).

Whether expert medical opinion evidence is required in a particular case turns on the complexity of the injury and the likelihood that an ordinary person would come in contact with such an injury.  See, e.g., Fane v. Zimmer, Inc., 927 F.2d 124, 131 (2d Cir. 1991).  For simple and familiar injuries, expert opinion is not necessarily required.  For example, "a lay juror is eminently capable of determining whether a person who is dropped face-first from a height of three feet onto the ground is likely to sustain physical injury." Goodwine v. Nat'l R.R. Passenger Corp., No. 12-cv-3882 (TLM), 2014 WL 795756, at *9 (S.D.N.Y. Feb. 27, 2014); see also Byfield v. Chapman, No. 12-cv-6131-FPG, 2015 WL 6439001, at *2-*5 (W.D.N.Y. Oct. 22, 2015) (plaintiff, a pro se prisoner, could testify that his urine contained blood five day after alleged beating without enlisting an expert).

6

"Where, however, the nexus between the injury and the alleged cause would not be obvious to the lay juror, 'expert evidence is often required to establish the causal connection between the accident and some item of physical or mental injury.'" Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (quoting Moody v. Maine Cent. R.R. Co., 823 F.2d 693, 695 (1st Cir. 1987)). This is particularly true "[i]n a case such as this, where an injury has multiple potential etiologies." Id. Thus, the Second Circuit has affirmed a grant of summary judgment in light of missing expert testimony linking exposure to toxins to a death, even under the reduced burden of the Jones Act. Id. It has granted judgment as a matter of law to defendants where plaintiff failed to provide expert medical evidence that an alleged assault could cause a miscarriage. Barnes v. Anderson, 202 F.3d 150, 159-61 (2d Cir. 1999). And it has affirmed a directed verdict in favor of defendants where no expert evidence emerged at trial that a particular device, implanted via a complicated surgery, caused a bone to fracture. Fane, 927 F.2d at 131-32. District courts have faithfully followed the Second Circuit's binding guidance, and thus have, for example, granted summary judgment to defendants where plaintiffs do produce expert evidence on causation, but that evidence advances a number of equally plausible alternative theories through which "no lay juror could wade … and reasonably pick one." Glowczenski v. Taser Int'l, Inc., 928 F. Supp. 2d 564, 584 (E.D.N.Y. 2013); see also id. at 581-82 (rejecting attempt to prove causation by means of autopsy photos).

7

The wrongful death claim in the instant case is unmistakably a complicated medical question outside the experience of an ordinary lay juror. Based on the Court's grant of summary judgment as to all but the final shot, a jury would be required to parse the effect of the final shot from that of the initial volley in order to determine whether the final shot caused Mr. Jaquez's death for purposes of the wrongful death tort claim. The earlier shots are an "obvious potential supervening cause for the plaintiff's injury," Byfield, 2015 WL 6439001, at *2, and determining the cause of Mr. Jaquez's death requires disentangling "multiple potential etiologies." Wills, 379 F.3d at 46. Whether one particular bullet wound out of many significantly contributed to a person's death is a complex question about which a lay juror cannot draw a reasonable inference without expert medical evidence.

Plaintiffs are thus required to produce admissible expert medical evidence on causation in order to sustain their wrongful death claim. They have chosen not to do so. The Court excluded plaintiffs' initial proposed expert, Dr. Richard F. Sullivan, because his proposed testimony did not meet the standard for expert opinions required by Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) and its related case law. (ECF No. 169 at 11-29.) After this preclusion, and after the close of discovery, the Court provided plaintiffs with an additional opportunity to proffer a new expert; for reasons that remain unclear to the Court, they elected not to do. (ECF Nos. 189 & 190.)[1] Therefore, the only witness who will provide any

---

[1] Interestingly, the cost of expert retention was not the issue. At a conference at which this issue was discussed, counsel for plaintiffs stated that they had the financial resources to hire an expert if they chose to do so.

8

medical testimony at all is Dr. Kristen Landi, the medical examiner who conducted Mr. Jaquez's autopsy and will testify as a percipient witness.

Plaintiffs deposed Dr. Landi on October 9, 2014. (Landi Tr. 1:16.) In response to questioning about the effect of wound A, Dr. Landi testified that "[t]he consequence of [its] damage to contributing to [Mr. Jaquez's] cause of death is negligible." (Id. 36:23-25.) There is no contradictory expert medical evidence on this point. Plaintiffs have proffered no evidence that supports that wound A was a substantial contributing factor in Jaquez's death. Instead, plaintiffs argue that the jury should be allowed to infer that the wound was a substantial contributing factor without any supportive medical evidence. But this merely seeks to have the jury engage in speculation. There is no principle of law that would allow this. See Prunier v. City of Watertown, 936 F.2d 677, 680 (2d Cir. 1991) (under New York law, "a jury may not base its verdict on mere speculation, surmise or guesswork"). The gunshot wounds created an unmistakably complex set of injuries; and the medical examiner has specifically testified that the final shot, the only one still at issue, made a negligible contribution to Mr. Jaquez's death. Asking the jury to ignore that evidence in favor of speculation would be inappropriate.

For the reasons discussed above, on the facts here, a lay juror cannot draw a reasonable inference about the medically complicated question of causation without expert evidence. Plaintiff have produced no such evidence, and thus cannot carry their burden to sustain a wrongful death claim. It follows that plaintiffs may not

...
...
...

seek damages that were caused by Mr. Jaquez's death, as opposed to being caused by the final shot.

    B.    <u>Remaining Claims</u>

Defendants also move for summary judgment as to the final bullet, based on the alleged-to-be-undisputed medical and other testimony regarding Mr. Jaquez's physical capabilities at the time of the final shot. (ECF No. 226 at 3-5.) This portion of the motion must be denied. The Court has, on several occasions, identified material questions of fact that preclude summary judgment as to the final shot. (ECF Nos. 169, 186.) It is sufficient for the purposes of this late motion to note that defendants' liability for the final shot depends not solely on Mr. Jaquez's physical capabilities at the time but also, <u>inter alia</u>, on whether Mr. Jaquez was holding a knife and, if so, what (if anything) he was doing with it.

IV.    CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is GRANTED as to plaintiffs' wrongful death claim, and DENIED as to the rest of the case. This ruling also requires the preclusion of damages related evidence based on death; the parties should plan their presentations accordingly.

    SO ORDERED.

Dated:    New York, New York
            March 30, 2016

_____
    KATHERINE B. FORREST
    United States District Judge